# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES KEITH JACKSON, | ) |
| Petitioner, | ) |
| vs. | ) NO. CIV-16-974-R |
| JASON BRYANT, Warden, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner, Charles Keith Jackson, a state court prisoner appearing pro se, has filed a petition for writ of habeas corpus seeking relief pursuant to 28 U.S.C. § 2254 (Doc. 1). However, because Petitioner is challenging the revocation of a suspended sentence, the Court finds that the proper avenue for relief is 28 U.S.C. § 2241. The Court therefore construes the petition as a request for relief under § 2241 and applies de novo review to the two claims raised therein. See Leatherwood v. Allbaugh, 861 F.3d 1034, 1041-43 (10th Cir. 2017) (acknowledging circuit precedent that challenges to the revocation of a suspended sentence are reviewed de novo under § 2241).

### Facts and Procedural History

Petitioner challenges the revocation of the suspended sentence he received in Oklahoma County District Court Case No. CF-1999-1736. On March 3, 1999, Petitioner killed two people while driving under the influence of alcohol, and on February 23, 2000,

he pled guilty to two counts of first degree manslaughter. Petitioner received a concurrent twenty-year sentence with ten years suspended. Pursuant to the probation guidelines, Petitioner was advised that his suspended sentence could be revoked in full if he violated any city, state or federal law (O.R. 1, 17-20, 23-33). In Carter County District Court Case No. CF-2014-177, Petitioner was charged with his third first degree manslaughter offense, and on June 9, 2014, the State filed an application to revoke Petitioner's suspended sentence (O.R. 51).

On March 17, 2015, a hearing on the application was held. Petitioner pled guilty to the application and the parties presented argument regarding sentencing. The State asserted that the sentence should be revoked in full. The prosecutor argued that after killing two people, Petitioner "was given a chance to have a normal life," but having caused a third death under the same circumstances, revoking the entire ten-year suspended sentence was "the only appropriate thing to do." In support of his argument, the prosecutor offered photographs documenting Petitioner's new crime. He also presented the results of a blood test which showed that Petitioner was driving under the influence of drugs.[1] Referring to the transcript of Petitioner's trial on the new charge, which the trial court had the opportunity to read, the prosecutor remarked how Petitioner attempted to flee the scene and showed no remorse for what he did (Tr. 3/17/15, 3-4).

---

[1] There is no indication that the State's exhibits were admitted and they are not a part of the state court record.

Defense counsel argued that although the offenses were the same, the circumstances were "significantly different." In the prior case, Petitioner was driving under the influence of alcohol, but in the new case, he was driving under the influence of a prescribed medication. Defense counsel also noted that there was no evidence showing the amount of medication in his system at the time of the accident (Tr. 3/17/15, 5). Nevertheless, defense counsel acknowledged the severity of situation: "[Petitioner] very well may have three people's blood on his hands" (id. at 6). Consequently, defense counsel's only request to the trial court was for a concurrent sentence should the trial court grant the State's application to revoke (id. at 5-6). Defense counsel argued that the jury's assessment of a twenty-five year sentence on the new charge, when the jurors knew about Petitioner's prior manslaughter convictions and could have returned a life sentence, showed that there were mitigating circumstances warranting a concurrent sentence:

> [Petitioner] is a member of my community. I'm from Ardmore. A jury sat, impaneled, heard the evidence. They were aware that these other two persons had previously been killed by [Petitioner] in an accident and they gave him 25 years. They had the option of giving him life.
>
> I understand this is heinous and so does [Petitioner], but this situation, Your Honor, warranted a trial. And I believe the evidence that came out at trial was mitigating to the fact that the jury declined to give him life in prison. He may very well have three people's blood on his hands. I can't speak to that or not. But I will tell the Court that, having heard the full breadth of the evidence, the jury still chose to give him 25 and not life.

Id. Defense counsel also noted that Petitioner, who was fifty-seven years old at the time of the revocation hearing, was not a young man (O.R. 70; Tr. 3/17/15, 7).[2]

---

[2] Pursuant to Okla. Stat. tit 21, §13.1 (2011), Petitioner is required to serve eighty-five percent (85%), or 21.25 years, of his Carter County sentence before becoming parole

3

Before announcing its sentencing decision, the trial court gave Petitioner an opportunity to speak. Petitioner acknowledged the severity of his crimes and he took full responsibility for his actions (Tr. 3/17/15, 7-8). Consistent with his counsel's argument, he asked only for a concurrent sentence:

> All I'm asking is, you know, I've been sentenced for 25 years at 85 percent, you know, and if I do, am blessed enough to walk out, you know, I'd hate to -- I just don't want to have that ten years being something else I have to do, Your Honor. That's all I've got to say.

(id. at 8). The trial court then revoked Petitioner's suspended sentence in full and ordered it to run consecutive to his twenty-five year sentence (id.). In Case No. RE-2015-377, the Oklahoma Court of Criminal Appeals (hereinafter "OCCA") affirmed the revocation. A copy of this unpublished opinion is attached to the response (Doc. 15 at Exhibit 5).

Petitioner presents two grounds for relief, both of which were presented to the OCCA in his appeal of the trial court's revocation order. See Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254). Respondent has responded to the petition (Doc. 15). No reply has been filed. For the reasons set forth herein, the Court finds that Petitioner is not entitled to habeas relief.

---

eligible (Tr. 3/17/15, 6). The import of counsel's argument, therefore, was that even if the trial court denied the State's application to revoke or ordered concurrent service of Petitioner's sentences, Petitioner would still not be eligible for release until he is seventy-eight years old.

## Ground One

In his first ground for relief, Petitioner asserts that his counsel was ineffective. Petitioner faults counsel for advising him to plead guilty to the State's application to revoke. He also claims that counsel should have presented additional mitigating evidence. Petitioner asserts that had he been adequately represented at the revocation hearing, the outcome would have been different.

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." Burt v. Titlow, 571 U.S.___, 134 S. Ct. 10, 18 (2013). Whether counsel has provided constitutional assistance is a question to be reviewed under the familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief, Strickland requires Petitioner to show not only that his counsel performed deficiently, but that he was prejudiced by it. Id. at 687. Petitioner must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. The assessment of counsel's conduct is "highly deferential," and Petitioner must overcome the strong presumption that counsel's actions constituted "'sound trial strategy.'" Id. at 689 (citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." Id. at 690.

As Strickland cautions, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Therefore, "[a] fair assessment

of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Within "the wide range of reasonable professional assistance," "[t]here are countless ways to provide effective assistance in any given case[, and] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id.

As for prejudice, Strickland requires Petitioner to show that his counsel's errors and omissions resulted in actual prejudice to him. Id. at 687. In order to make a threshold showing of actual prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Because counsel's decision to focus on punishment was sound strategy, Petitioner has not demonstrated his entitlement to relief under Strickland. Petitioner was given great leniency the first time around. He killed two people while driving under the influence of alcohol and was given a concurrent twenty-year sentence with ten years suspended. He then violated the terms of his probation by committing the same offense and killing a third person. The odds of Petitioner receiving any additional leniency under these facts were slim to none. It was therefore reasonable for counsel to advise Petitioner to take responsibility for his actions and then limit argument to a request for a concurrent sentence.

Petitioner's arguments to the contrary are unpersuasive. First, although Petitioner notes that "he did not appear to be fully informed of his rights in the matter" (Doc. 2, Pet'r's

6

Br. at 5), but for his comment to the court that he did not think he had seen the State's application to revoke, there is no indication that he was not fully aware of the purpose of the hearing or its ramifications. Counsel told the court that a copy of the application had been provided and the summary of facts which Petitioner signed indicates the same (O.R. 70; Tr. 3/17/15, 3). Petitioner also told the court that he understood that the basis for the application was his commission of another manslaughter offense in Carter County (Tr. 3/17/15, 3). In addition, when Petitioner sought an earlier continuance in the case, he was advised of his rights, including the State's burden to prove the allegations contained in the application to revoke by a preponderance of the evidence (O.R. 57).

Second, Petitioner asserts that by pleading guilty, he lost the opportunity to present the mitigating circumstances of his new crime. However, as the record reflects, even though he pled guilty, Petitioner was able to present mitigating evidence. Although Petitioner argues that counsel could have presented additional mitigation evidence, Petitioner has not pointed to any evidence which would have called into question his guilt to the application to revoke. At the time of the revocation hearing, a jury had already found Petitioner guilty of the new offense beyond a reasonable doubt, and at the hearing, the State only had to show Petitioner's guilt by a preponderance of the evidence. Petitioner has not shown that the State could not have met this lower burden of proof.[3]

---

[3] Although Petitioner has alerted the Court to a post-conviction challenge to his new conviction, even he acknowledges that his actions were criminal. See Pet'r's Br. at 7 (claiming that he should have been charged with vehicular homicide). The Court notes that Petitioner's direct appeal and post-conviction challenges to his Carter County conviction were both denied by the OCCA in unpublished opinions. Jackson v. State, No. PC-2017-581 (Okla. Crim. App. Sept. 8,

7

Third, Petitioner has not shown that counsel was ineffective for failing to present additional mitigation evidence. Referring to an application for sentence modification he filed in November 2000 (O.R. 45-47), Petitioner states that during his first incarceration he participated in a drug offender work camp and completed classes in anger management, self-discipline, employment education, and substance abuse. Petitioner also notes the letters of support filed on his behalf from his mother, a friend, and his employer in December 2000 (O.R. 48-50), and he makes an additional citation to the record to show that he "dutifully paid" his fines and court costs (Pet'r's Br. at 5-6). With respect to this evidence, Petitioner then argues as follows:

> When combined with the fact that he [Petitioner] was on prescription medication, not alcohol, at the time of the Carter County incident, the above information would have shown the trial court that Petitioner had taken seriously the conditions of his first sentence, had worked hard to overcome addiction, had family and friends who supported him, and the most recent incident was not the result of willful substance abuse, for, as counsel did point out, no evidence existed that Petitioner had abused his prescription medication.

Id. at 6 (citation omitted).

While counsel did not mention this information in her argument to the trial court, it was not only available to the court as part of the court record,[4] but it also had little

---

2017); Jackson v. State, No. F-2014-985 (Okla. Crim. App. Aug. 27, 2015). These opinions are available at www.oscn.net.

[4] Petitioner's only update to this information is his assertion that his earlier supporters would have supported him again (Pet'r's Br. at 6). However, updated letters from those willing to support Petitioner upon release would have been of little benefit to Petitioner at the revocation hearing because release was not an option. Even if the trial court had denied the State's application to revoke or ordered concurrent service of his sentences, Petitioner still faced over twenty years' imprisonment on the Carter County conviction.

8

mitigating value. As Petitioner acknowledges, counsel did argue that the new offense was not alcohol related and that there was no evidence that Petitioner had abused his prescribed medication. But given that Petitioner had violated probation by committing the same offense and killing a third person while under the influence, counsel could not have made a persuasive argument that Petitioner was a good probationer who had worked hard to overcome addiction. Petitioner's new conviction was a substantial intervening circumstance which made Petitioner's earlier participation in self-help programs and timely payment of court-ordered costs inconsequential.

Petitioner is obviously disappointed in the outcome of his revocation proceeding; however, he has failed to overcome Strickland's strong presumption that counsel's actions were reasonable. Strickland affords great deference to an attorney's strategic decisions. Applying that deference here, it is clear that Petitioner was not denied the ineffective assistance of counsel. Ground One is therefore denied.

**Ground Two**

In his second ground for relief, Petitioner asserts that the trial court abused its discretion by revoking his suspended sentence in full and running it consecutive to the twenty-five year sentence he received for his new offense. Petitioner states that "a more just result would be either no revocation, or a smaller revocation, or concurrent serving of the revocation" (Pet'r's Br. at 13).

This claim is not cognizable in this proceeding. As the Tenth Circuit acknowledged in Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000), "wide discretion [is given] to the state trial court's sentencing decision, and challenges to that decision are not generally

constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." Thus, once the Court determines that Petitioner's sentence is statutorily authorized, review of the claim ends. Id. Petitioner makes no allegation that his sentence is outside the statutory limits and the Court's independent review does not reveal any irregularities. Petitioner received a ten-year suspended sentence which the trial court had the discretion to revoke in full. See Robinson v. State, 809 P.2d 1320, 1322 (Okla. Crim. App. 1991) ("the decision to revoke a suspended sentence lies within the discretion of the trial court"). The trial court also had the discretion to run the sentence consecutively. See Birdine v. State, 85 P.3d 284, 286 (Okla. Crim. App. 2004) ("the decision to run sentences concurrently or consecutively is within the discretion of the trial court"). Because Petitioner's sentence is lawful, no further review is necessary and Ground Two is denied.

## Conclusion

Having concluded that Petitioner's arguments do not establish a right to relief, his petition for writ of habeas corpus (Doc. 1) is **DENIED**. A certificate of appealability is also **DENIED**.[5] Judgment will enter accordingly.

IT IS SO ORDERED this 5th day of January, 2018.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[5] See Dulworth v. Jones, 496 F.3d 1133, 1135 (10th Cir. 2007) ("[A] state prisoner seeking to appeal the denial of habeas relief in a § 2241 proceeding must obtain a COA to appeal.").